IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

PATRICK C. LYNN,

    **Plaintiff,**

    v.                                      CASE NO. 19-3125-DDC

**SHERRI PRICE, et al.,**

    **Defendants.**

## ORDER

Plaintiff, Patrick C. Lynn, brings this pro se civil rights case under 42 U.S.C. § 1983. Plaintiff is incarcerated at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). Plaintiff has filed a motion for leave to proceed in forma pauperis (Doc. 2), and a Motion for Filing Fee Waiver Based on Imminent Dangers of Serious Physical Injury (Doc. 3).

Plaintiff is subject to the "three-strikes" provision under 28 U.S.C. § 1915(g). Court records fully establish that Plaintiff "has, on 3 or more prior occasions, while incarcerated . . . , brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted."[1] Accordingly, he may proceed in forma pauperis only if he establishes a threat of imminent danger of serious physical injury. *Id*. The Court has examined the Complaint (Doc. 1) and Plaintiff's Motion for Filing Fee Waiver Based on Imminent Dangers of Serious Physical Injury (Doc. 3) and finds no showing of imminent danger of serious physical injury.

In this current case, Plaintiff alleges that LCF has improperly seized or destroyed his legal files. Plaintiff alleges that he is being transferred between Kansas Department of

---

[1] *See, e.g., Lynn v. McClain,* 12 F. App'x 676, 679 (10th Cir. 2001) (noting that Lynn's "past civil filings have subjected him to the 'three strike' provisions"); *Lynn v. McClain,* 162 F.3d 1173 (10th Cir. 1998) (finding that Lynn "now has a total of six strikes against him").

1

Corrections ("KDOC") facilities every four months in retaliation for exercising his First Amendment rights. Plaintiff alleges that he is transferred between the El Dorado Correctional Facility ("EDCF"), the Hutchinson Correctional Facility ("HCF"), and LCF, and that every transfer has resulted in the loss of his legal and personal property because there is no consistency as to what is allowed at each facility. Plaintiff alleges that while EDCF and HCF allow excess legal materials for pending court cases, LCF does not.

Plaintiff alleges that when he was transferred from HCF to LCF at the end of May 2019, his property was rearranged into multiple boxes for the convenience of staff. Plaintiff alleges that despite correspondence from HCF to LCF regarding the property boxes, his property was taken to the LCF property room upon his arrival at LCF. Plaintiff alleges that staff went through his property and made their own determinations about what legal materials were related to pending court cases and the rest was seized for destruction. Plaintiff refused the half-full transfer box they attempted to return to him. Plaintiff was told that his excess property would be destroyed if he did not have someone retrieve it.

Plaintiff alleges that the issues with his property continue to cause him to suffer extreme distress and cardiac issues, and that his grievances regarding his property have been ignored or rejected. Plaintiff alleges that he cannot meet his court deadlines in his pending cases without his legal files, which causes unnecessary duress that affects his physical and psychological health. Plaintiff alleges that in June of 2019, his personal property was ransacked, destroyed, and broken during a re-inventory of his cell while he was in the infirmary at LCF. Plaintiff alleges that unless Defendants return his property he will suffer additional cardiac issues, a crippling stroke, or a fatal heart attack.

Although Plaintiff's legal property is the focus of his Complaint, he also makes other allegations in his Complaint regarding: access to the law library, pens and stamps; the theft of his television in 2018; receiving disciplinary violations without due process; the cancellation of his "keep on person" ("KOP") medications; the denial of face-to-face communications with attorneys; and the illegal opening of his mail.

Plaintiff alleges that his KOP medications were cancelled on July 5, 2019, based on a false allegation that he had tossed out all of his KOP mediations. Plaintiff was told that if he wanted to receive the medication, he would need to receive it from medical staff by placing a cup of water outside his cell bars for the CMA to "dump" the pills into. Plaintiff refused to do this because on a prior occasion a nurse attempted to give Plaintiff someone else's medication.

Plaintiff alleges that he should be exempted from the three-strikes statute because he is in imminent danger of serious physical injury due to the "overwhelming distress at the retaliatorily malicious seizures/destructions & denials of [his] legal property." (Doc. 1, at 22.) Plaintiff alleges that he is in imminent danger of serious physical injury because the stress has caused him to experience near daily heart attack spasms, and he is at a high risk of suffering a crippling stroke or fatal heart attack.

Plaintiff filed a Motion for Filing Fee Waiver Based on Imminent Dangers of Serious Physical Injury (Doc. 3), alleging that since his transfer to LCF on May 23, 2019, he has been suffering near daily severe heart attack symptoms and has been hospitalized and admitted to the LCF Infirmary. He alleges that his KOP medications were cancelled on July 5, 2019, and while drafting his Complaint he had to take several nitro pills because of the overwhelming stress regarding the seizure of his property.

Plaintiff's allegations fail to contain plausible and credible allegations of imminent danger of serious physical harm. "To meet the only exception to the prepayment requirement, a prisoner who has accrued three strikes must make 'specific, credible allegations of imminent danger of serious physical harm.'" *Davis v. GEO Group Corr.*, 696 F. App'x 851, 854 (10th Cir. May 23, 2017) (unpublished) (quoting *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011)). The prisoner "should identify at least the general nature of the serious physical injury he asserts is imminent," and "should make a specific reference as to which of the defendants may have denied him what medication or treatment for what ailment on what occasion." *Id.* (quoting *Hafed*, 635 F.3d at 1180). "Vague and utterly conclusory assertions are insufficient." *Id.*

The harm must be imminent or occurring at the time the complaint is filed, "allegations of past harm do not suffice." *Id.* (citations omitted). The "imminent danger" exception has a temporal limitation—"[t]he exception is construed narrowly and available only 'for genuine emergencies,' where 'time is pressing' and 'a threat . . . is real and proximate.'" *Lynn v. Roberts*, No. 11-3073-JAR, 2011 WL 3667171, at *2 (D. Kan. Aug. 22, 2011) (citation omitted). "Congress included an exception to the 'three strikes' rule for those cases in which it appears that judicial action is needed as soon as possible to prevent serious physical injuries from occurring in the meantime.'" *Id.* (citation omitted). "[A]llegations of past misconduct of defendants and even of past injury to plaintiff are insufficient to allow a three-striker to proceed IFP." *Id.* (citation omitted). The allegations of imminent physical danger must be plausible and credible. *Id.* at *3 (citations omitted).

The claims in Plaintiff's Complaint deal with his legal property and access to the courts. Neither situation renders Plaintiff in imminent danger of serious physical harm. *See Lynn*, 2011

4

WL 3667171, at *3 ("Obviously, allegations regarding conditions that involve no danger of physical injury, such as denial of court access or First Amendment claims of interference with mail and telephone privileges or religious rights, are not sufficient to establish the exception.") (citations omitted).

Also, he cannot claim that his stress over the situation satisfies the statutory exception. In *Skillern v. Jackson*, plaintiff argued that defendants failed to provide him with correspondence material that he had requested on several occasions. *Skillern v. Jackson*, No. CV610-014, 2010 WL 1737637, at *2 (S.D. Ga. March 29, 2010), *adopted,* 2010 WL 1737608 (S.D. Ga. April 29, 2010). Plaintiff asserted that "doctors prognosticate" that he will have another heart attack due to the stress defendants' "illicit conduct causes." *Id*. The court found that plaintiff failed to show that he was in imminent danger of serious physical injury at the time he filed his complaint. *Id*.

Courts have held "that there must be a nexus between the imminent danger a three-strikes prisoner alleges to obtain IFP status and the legal claims asserted in his complaint." *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009). "In deciding whether such a nexus exists, [courts] will consider (1) whether the imminent danger of serious physical injury that a three-strikes litigant alleges is fairly traceable to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would redress that injury." *Id.* at 298-99 (emphasis and footnote omitted); *see also Lomax v. Ortiz-Marquez*, 754 F. App'x 756, 759 (10th Cir. 2018) (unpublished) (adopting Second Circuit's position that inmate seeking imminent danger exception must show a nexus between imminent danger and legal claims asserted in complaint) (citing *Pettus*, 554 F.3d at 297).

The court in *Richardson v. Gessner Primecare Medical, Inc.*, found that plaintiff's allegation that he is experiencing headaches and pain from the tightening of his muscles when he thinks about the defendants' conduct, fails to establish that he is in imminent danger of serious physical injury, because "[p]laintiff's claimed physical injuries are traceable more to his own thoughts than the defendants' actions." *Richardson v. Dr. Gessner Primecare Medical, Inc.*, No. 165461, 2016 WL 6609181, at *2 (E.D. Pa. Nov. 7, 2016). The court found that it had no ability to fashion relief to address those injuries because any relief the court could provide "would have no effect on plaintiff's ability to cause himself anxiety, depression, headaches, and other pain upon recalling the defendants' actions." *Id*. The court found that even if plaintiff had alleged a sufficient nexus between the physical manifestations he was experiencing and the defendants' conduct, "the harms he describes are insufficient to establish that he is in imminent danger of serious physical injury for purposes of § 1915(g)." *Id*. (citations omitted); *see also Lyles v. Dretke*, No. 6:08cv382, 2009 WL 722076, at *1–2 (E.D. Tex., March 16, 2009) (allegations of mental stress and high blood pressure to the extent that the prisoner had to make 87 requests for blood pressure medication in 24 days did not show imminent danger of serious physical injury); *Beasley v. Holman*, No. 6:10cv660, 2011 WL 2690128 (E.D. Tex., July 11, 2011) (rejecting allegation that strip searches placed a prisoner in imminent danger because he claimed the humiliation caused by the searches resulted in a great degree of stress and mental anguish, producing trembling, increased blood pressure, feelings of restlessness, and other emotional reactions raising the strong possibility of a heart attack or stroke); *Threatt v. Davenport*, No. 1:13-cv-421, 2013 WL 1831803, at *2 (W.D. Mich. Apr. 30, 2013) (plaintiff was not in imminent danger despite allegations that he was being kept "inside a single man cell

23–24 hours a day" which was "stressing [him] out more keeping [his] blood pressure up sky high at risk for a heart attack or stroke, [and] stressing and depressing [him] to harm [himself]").

Lastly, Plaintiff has not shown that his disagreement with medical staff's procedure for administering medication places him in imminent danger. While Plaintiff may prefer to keep his medication with him at all times, Plaintiff is not being denied medication. Rather, he refuses to take his medication by use of the cup outside his cell bars. Plaintiff acknowledges that he was provided with nitro pills while drafting his Complaint. In *Van Dyke v. Pilland*, plaintiff argued that defendants were either giving him inadequate doses, or refusing doses altogether, of certain medications that he needed for high cholesterol and migraines. *Van Dyke v. Pilland*, No. 1:12-cv-129-RJC, 2013 WL 2632605, at *3 (W.D. N.C. June 12, 2013). Plaintiff alleged that because he was not receiving the medications as needed, he was at risk of suffering a heart attack or stroke, both of which "run in his family." *Id*. The court found that plaintiff's "allegations are conclusory and do not plausibly allege that Plaintiff is under *imminent* danger of serious physical injury." *Id*. at n.1;

"Numerous courts have concluded that where a three-striker inmate's allegations reflect that he has had access to medical care and simply disagrees with the opinions of the medical personnel who have examined him, he fails to satisfy the imminent danger requirement of 28 U.S.C. § 1915(g)." *Showalter v. Lee*, No. 7:15CV00106, 2015 WL 1800478, at *3 (W.D. Va. April 16, 2015) (citations omitted); *see also Baugh v. Missouri Dep't of Corr.*, No. 4:08CV01517 ERW, 2008 WL 4831783, at *1, n. 1 (E.D. Mo. Nov. 5, 2008) (no imminent danger where plaintiff admitted he was offered treatment for medical conditions but disagreed with offered treatment); *Johnson v. Sengneur*, No. 2:10-CV-121, 2010 WL 2901707, at *2 (W.D. Mich. July 22, 2010) (where plaintiff claimed he was denied medication in the past because he

7

refused to remove a picture from his door slot, and stated that he is 53 years old and could suffer a heart attack or stroke at any time, court held that "[a]ssuming that such an action would even constitute imminent danger, which is doubtful at best, allegations that a prisoner has faced imminent danger in the past are insufficient to trigger the exception under § 1915(g)) (citations omitted).

Accordingly, pursuant to § 1915(g) Plaintiff may not proceed in forma pauperis in this civil action. Plaintiff is given time to pay the full $400.00 district court filing fee[2] to the Court. If he fails to pay the full fee within the prescribed time, the Complaint will be dismissed based upon Plaintiff's failure to satisfy the statutory district court filing fee required by 28 U.S.C. § 1914.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Filing Fee Waiver Based on Imminent Dangers of Serious Physical Injury (Doc. 3) and motion to proceed in forma pauperis (Doc. 2) are **denied.**

**IT IS FURTHER ORDERED** that Plaintiff is granted until **September 13, 2019,** to submit the $400.00 filing fee. The failure to submit the fee by that date will result in the dismissal of this matter without prejudice and without additional prior notice.

**IT IS SO ORDERED**.

**Dated this 30th day of August 2019, at Kansas City, Kansas.**

                                        **s/ Daniel D. Crabtree**
                                        **Daniel D. Crabtree**
                                        **United States District Judge**

---

[2] If a person is not granted in forma pauperis status under § 1915, the fee to file a non-habeas civil action includes the $350.00 fee required by 28 U.S.C. § 1914(a) and a $50.00 general administrative fee pursuant to § 1914(b) and the District Court Miscellaneous Fee Schedule prescribed by the Judicial Conference of the United States.